The opinion of the Court was delivered by
Inglis, J.
A conflict of opinion upon the construction and legal effect of the contract entered into between Jane McKinney and William R. Reid, on the eve of their intermarriage, has occasioned much litigation. This litigation in some of its previous stages has ascertained that the beneficial interest in the estate, which at the execution of this contract Jane McKinney held in the property therein described, was by the contract reserved to her separate use during the contemplated coverture, and the mere dry legal title left to pass by the operation of the marriage to the husband to support this separate use. Reid vs. Lamar, 1 Strob. Eq. 27. It has now become important to ascertain further whether there was also reserved, by the operation of this contract, to Jane o McKinney when become Eeid, a power to dispose by will of the property in which she thus held a separate estate. She has attempted to do this, and if she has not the power, her attempt being ineffectual, she has died intestate. Her husband surviving her in such event, (there being no issue of the marriage living,) has succeeded under the Statute of Dis *356 tributions to the one-half of her separate property, and his creditors, made defendants here, are entitled to have his share subjected to the satisfaction of their general liens on his estate. Their appeal asserts such right.
The jus disponendi is necessarily inherent in ownership, certainly when the owner is sui juris. To attempt to super-add to a grant, or conveyance, of the absolute ownership of things, a power of absolute disposition over them, would be not unlike superadding to the creation of a perfect sun the power of shining. And when, as under the doctrine of the Courts of Great Britain, and of perhaps the larger number of the American States, the creation of a separate estate in a feme covert, proprio vigore clothes her with all the powers quoad hoc of a feme sole, except in so far as such power is curtailed by the express provisions of the instrument of creation, a general power of disposition, so far as not so expressly negatived, will attach upon and inhere in her ownership. Such seems to be recognized by the Supreme Court of Georgia as the law of this subject, in the case of Fears vs. Brooks, 12 Geo. R. 195, (1852.) If this be so, the present contract having been executed in Georgia where the parties were both then residing, where the marriage was consummated, and where the debts due to the defendants, creditors of Beid, were contracted, ought to have effect accordingly. We do not however rest our judgment on this ground. By a well-considered and for now a long time uniform course of judicial decision, which no individual dissent even has questioned, and which has commanded approbation and imitation elsewhere, it is ascertained to be the law of this State that, “ when property is given or settled to the separate use of a married woman, she has no powers to charge, incumber or dispose of it, unless in so far as power to do so has been conferred on her by the instrument creating her estate.” “ She can in no manner of respect be considered a feme sole. A feme sole disposes of or charges her property by her own act and according to her *357 own will, by her inherent power as owner. A feme covert exercises a delegated authority, and cannot exceed it.” Harper, Ch., in Reid vs. Lamar, ut supra.
It becomes necessary, then, to inquire whether this contract, by its terms, gives or reserves to Jane Beid such power of disposition as she has attempted to exercise. The intention of the parties, to be gathered from the instrument itself, conforming by a liberal interpretation its particular terms to the general purpose therein manifested, is to be sought for and effectuated. In Reid vs. Lamar, the Court, assuming, as the strongest aspect in favor of Beid’s creditors which the case could take, that a general power of disposition was reserved to the wife, but not adjudging that such was the actual effect of the contract, and certainly not adjudging the contrary, held, that the mere act of joining with her husband in the execution of promissory notes, a form of merely personal charge or obligation, could not be regarded as an execution of such a power, or as evidencing an intention to subject her separate estate to a specific liability. This contract consists of two sections, which seem to be set over against each other, and each to aim at accomplishing a distinct part of a common design, which is consummated by the joint effect of the two. Jane McKinney was a widow, possessed of property, and seemed to have needed the assistance of a man upon whom she could depend in making her property productive. ~W. B. Beid had the physical ability to labor, and, it may be, skill to direct his labor to effect,but needed capital in combination with which to make his labor profitable. Mutually anticipated benefit of this kind seems to have prompted their intermarriage, but there is evidently pervading the instrument, as its prime purpose, an intention to exclude the legal effect of marriage upon the property of each, so far as to retain to each practically the continuance of that dominion in fact which had been hitherto exercised without the interference or participation of the other. Accordingly wre find, in the first section, W. *358 E. Eeid surrendering to the intended wife the “full and free disposal of all and singular the property which she has now in possession,” &c., “to have and to hold the sole discretion guidance thereof.” And in the second Jane McKinney stipulating not to “ interfere, dispose of, or in any way wise inter-meddle with any or singular the effects or property ” of the intended husband. And to this general purpose the terms themselves of grant or engagement on the part of Eeid in the first section seem without violence to their import to conform. These terms are, in the judgment of the Court, too large to be satisfied by merely securing to the wife the separate beneficial enjoyment of the property against the marital rights of the husband, or even against his active interference without her consent in its management or control. The purpose to effect so much as this is more than sufficiently manifested in the attempted interposition of a third person to act for and in behalf of the wife “for the better securing the property,” in the consent .of the husband that the wife shall “have the sole discretion guidance thereof,” and in the stipulation of the wife to afford out of the proceeds of the property “ a decent and competent support ” to the husband. When, therefore, it is further agreed that there shall be “ surrendered to her the full and free disposal of all and singular the property,” there is superadded, to the covenant that the seizin or legal estate, which the contemplated marriage would transfer to him, should be held for her separate use, the further covenant that she should, notwithstanding her coverture, have a general power of disposition, such as was incident to the legal estate which she then held, but which would, by the doctrine of our Courts, be excluded From accompanying the reservation of the separate use unless it were itself also expressly reserved.
It is objected that inasmuch as the equitable estate secured to Jane Eeid was, as to quantity of interest, an absolute one, any attempt to attach by distinct and independent grant a *359 power of disposition is simply nugatory. It has already been remarked that that is true in reference to an estate held by one who is sui juris. But the reason is, that a power which is of the essence of and by necessity of nature subsists in an estate, cannot be added by independent grant, &c., to the creation of such estate, or, in other words, that such a grant creates nothing that did not already exist. But a separate estate or use in a married woman is the creature of equity, and has those attributes only with which equity clothes it. Its essence consists simply by the formal intervention of a trustee, or, without this, in excluding the marital right of beneficial ownership in the corpus of personalty and usufruct of realty, which would otherwise, by the mere legal operation of marriage, attach upon the property; beyond this, the legal disabilities of coverture are not necessarily removed by the mere creation of such estate. Equity may go farther, and, as incidental to such creation, remove all or some of these disabilities absolutely, or under qualifications. This has not been done in South Carolina. There being here, therefore, no power of disposition necessarily incident to, or inherent in, such separate estate, of what quantity of interest soever it may be, there is no inconsistency or legal absurdity in adding such power, by grant or other proper mode, to the creation of such estate. That such power may be so added seems to be the expressed law of the decided cases.
A married woman, having a separate estate, and having also a general and absolute power of disposition over it, may charge or alien it, or any part of it, or partially or wholly, temporarily or permanently, divest herself of her interest in it, or in any part of it, in any of the modes in which the same kind of property or things may be legally charged or aliened, &c., by one who is sui juris; only her, intention to do this must be clearly manifested. It cannot be necessary that whenever she makes a gift or other disposition of an article of property, or sells the produce of her *360 farm, she shall make express and formal reference to the instrument by virtue of which she is empowered to do this. Having no power to dispose of corpus, or income, except as conferred by the instrument, each act of disposition ought reasonably to be referred to the only source of her power, and she ought to be considered as having made the disposition in the execution, of the only power which could make it effectual. It is not the case of a power of appointment general, or special, where more strictness may be proper. We are of opinion, however, that in the terms of the testamentary paper executed by Jane Eeid, there is a sufficient reference to her general power of disposition, secured by the contract of herself and her husband notwithstanding the coverture, or against the disability which coverture would else have imposed, to make her will a good and valid execution of that power.
The power of disposition reserved or secured to Jane Eeid, by its terms embraced, not only the specific property which she then had in her possession, but also “ all the increase thereafter to arise therefrom, or in anywise from that then existing property to proceed.” This involved the power to invest the income in the purchase of other property, real or personal, and at last dispose of the original corpus, with all the accumulations of income in whatever form invested. The two tracts of land particularly mentioned in the will appear to have been purchased with the proceeds of the secured property, and to be, therefore, subject to the power of disposition as part of the general mass on which, by the terms of the contract, that powbr might operate.
This Court perceives no error in the direction of the circuit decree, and it is ordered that the same be affirmed and the appeal dismissed.
Dunkin, C. J., and Wardlaw, J., concurred.

Decree affirmed.